**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

United States Courts
Southern District of Texas
FILED

APR 1 1 2018

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO.** |
| | § | |
| **JUAN CARLOS CASTILLO** | § | **UNDER SEAL** |
| **RINCON,** | § | |
| | § | |
| **Defendant** | § | **18CR200** |

**INDICTMENT**

THE GRAND JURY CHARGES:

**COUNT ONE**
**(Conspiracy – 18 U.S.C. § 371)**

**Introduction**

At all relevant times, unless otherwise specified:

1.      The Foreign Corrupt Practices Act of 1977 ("FCPA"), as amended, Title 15, United States Code, Sections 78dd-1, *et seq.*, was enacted by Congress for the purpose of, among other things, making it unlawful to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value, directly or indirectly, to a foreign official for the purpose of obtaining or retaining business for, or directing business to, any person.

2.      Petroleos de Venezuela S.A. ("PDVSA") was the Venezuelan state-owned and state-controlled oil company.  PDVSA and its subsidiaries and affiliates

were responsible for the exploration, production, refining, transportation, and trade in energy resources in Venezuela and provided funding for other operations of the Venezuelan government. PDVSA Services, Inc. was the U.S.-based affiliate of PDVSA located in Houston, Texas, that, at various times, was responsible for international purchasing on behalf of PDVSA. Bariven S.A. was the PDVSA procurement subsidiary responsible for equipment purchases. PDVSA and its wholly owned subsidiaries, including PDVSA Services, Inc. and Bariven S.A., (hereinafter collectively referred to as "PDVSA") were "instrumentalities" of the Venezuelan government as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A). PDVSA officers and employees were "foreign officials" as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2)(A).

3.      PDVSA awarded contracts for logistics services such as freight forwarding in a number of ways, including through a competitive bidding process. Typically, at the end of a contract period, there would be a competitive re-bidding process. Sometimes, however, the existing contracts were extended for additional periods of time.

4.      "Company 1," a company whose identity is known to the Grand Jury, was organized under the laws of Texas, and headquartered in the Southern District of Texas. Company 1 was thus a "domestic concern" as that term is used in the

FCPA, Title 15, United States Code, Section 78dd-2(h)(1). Company 1 provided logistics services pursuant to contracts with PDVSA. Company 1 was one of a group of family-owned companies that performed services for PDVSA.

## The Defendant and His Co-Conspirators

5.      Defendant **JUAN CARLOS CASTILLO RINCON** ("**CASTILLO**") was a naturalized U.S. citizen and a resident of Texas. **CASTILLO** was a manager of Company 1. **CASTILLO** was thus a "domestic concern" and an officer, director, employee, agent, and shareholder of a "domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

6.      "Co-Conspirator 1," an individual whose identity is known to the Grand Jury, was a naturalized U.S. citizen and a relative of **CASTILLO**. Co-Conspirator 1 owned and controlled Company 1. Co-Conspirator 1 was thus a "domestic concern" and an officer, director, employee, agent, and shareholder of a "domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

7.      "Employee A," an individual whose identity is known to the Grand Jury, was an employee of Company 1.

8.      "Employee B," an individual whose identity is known to the Grand Jury, was an employee of Company 1.

3

## The Foreign Official

9.      "Official A," an individual whose identity is known to the Grand Jury,

was at all relevant times employed by PDVSA, including as a manager at PDVSA

Services, Inc.  Official A's job responsibilities included supervising the

procurement process and maintaining relationships with current PDVSA vendors.

In that capacity, Official A had the authority to compile lists of vendors that were

invited to bid on upcoming PDVSA contracts.  Official A was a "foreign official"

as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-

2(h)(2)(A).

## The Conspiracy

10.      Beginning in or around 2011 and continuing through at least 2013, in

the Southern District of Texas, and elsewhere, the defendant,

**JUAN CARLOS CASTILLO RINCON**

did willfully and knowingly conspire, confederate, and agree with Co-Conspirator

1 and others known and unknown to the Grand Jury to commit offenses against the

United States, that is, to willfully make use of the mails and means and

instrumentalities of interstate commerce corruptly in furtherance of an offer,

payment, promise to pay, and authorization of the payment of any money, offer,

gift, promise to give, and authorization of the giving of anything of value to a

4

foreign official and to a person, while knowing that all and a portion of such money and thing of value would be and had been offered, given, and promised to a foreign official, for purposes of: (i) influencing acts and decisions of such foreign official in his official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist **CASTILLO**, Company 1, Co-Conspirator 1, and others, in obtaining and retaining business for and with, and directing business to, Company 1 and its associated companies, and others, in violation of the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-2(a).

## **Purpose of the Conspiracy**

11.     The purpose of the conspiracy was for **CASTILLO** and his co-conspirators to enrich themselves by obtaining and retaining lucrative logistics contracts with PDVSA through corrupt and fraudulent means, including by paying bribes to PDVSA officials.

## Manner and Means of the Conspiracy

12.    The manner and means by which **CASTILLO** and his co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following, while in the Southern District of Texas and elsewhere:

13.    **CASTILLO** and Co-Conspirator 1, together with others, conspired to pay bribes to Official A, including through the use of interstate and foreign wires in order to influence acts and decisions of Official A in his official capacity and to induce Official A to do and omit to do certain acts, including, but not limited to:

    a. assisting Company 1 in winning PDVSA contracts and contract extensions;

    b. providing **CASTILLO** with inside information concerning the PDVSA bidding process;

    c. supporting Company 1 in internal PDVSA meetings regarding PDVSA purchasing decisions;

    d. requesting modification of Company 1's contract with PDVSA to the advantage of Company 1.

14.    **CASTILLO**, together with others, caused cash for bribe payments to be withdrawn from Company 1's bank accounts and to be provided to Official A.

15.    **CASTILLO**, together with others, caused bribe payments to be wired from Company 1's bank account to a bank account of in the name of a relative of Official A, and whom Official A had designated to receive the bribes.

16.    **CASTILLO**, together with others, attempted to conceal the bribes to Official A, by creating false justifications for the bribes, including requesting or receiving invoices for services that were never rendered in order to disguise the bribe payments to Official A.

### Overt Acts

17.    In furtherance of the conspiracy and to achieve the objects thereof, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Texas and elsewhere, at least one of the following overt acts, among others:

a.  On or about December 19, 2012, **CASTILLO** sent an email to an employee of Company 1 stating, in part and as translated into English, "Please make me a check payable to cash in the amount of 13,000 to cover the monthly payment of [Official A.].  I will cash it tomorrow morning as he comes to collect the money at 12."

b.  At some point in or around 2012 or 2013, **CASTILLO** offered to pay Official A additional bribes if Official A could assist Company 1 by adding an in/out fee provision to Company 1's contract with PDVSA

when that contract was extended.  The in/out fee provision allowed Company 1 to charge PDVSA an additional fee every time Company 1 processed PDVSA equipment at one of its facilities, thereby generating additional revenue for Company 1.  Official A agreed.

c.  In or around early 2013, **CASTILLO** directed Official A to provide him with a bank account into which **CASTILLO** could cause bribes to be transferred directly, instead of withdrawing cash from Company 1's account.

d.  On or about March 26, 2013, **CASTILLO** sent an email to Employee A, copying Co-Conspirator 1, and stating, in part and as translated into English, "you will receive an invoice from [a relative of Official A], once you get it please send it to [Employee B] and myself asking us to please make the payment for the [Company 1] account here in Houston."

e.  On or about June 4, 2013, Employee A received the invoice referenced in the March 26, 2013 email.  The invoice was for $59,928.87, and directed Company 1 to send the payment to an account in the Cayman Islands in the name of a relative of Official A.

f.  On or about June 10, 2013, Employee A emailed the invoice referenced in Paragraph 17(e) above to Employee B, and copied **CASTILLO** as instructed.

g. On or about June 10, 2013, in response to Employee A's June 10, 2013 email referenced in Paragraph 17(f) above, Employee B emailed **CASTILLO** asking "What is this for?"

h. On or about June 10, 2013, **CASTILLO** replied to the email referenced in Paragraph 17(g) above, stating, in part and as translated into English, "[t]his is to cover the expenses of [Official A] from PDVSA.  It includes his monthly payment, plus the additional amount that we agreed to based on the volume they give us."  In the email, **CASTILLO** also requested that Employee B "move forward with this transfer as soon as possible."

i. On or about June 10, 2013, **CASTILLO** caused $59,928.87 to be transferred from a bank account in the Southern District of Texas in the name of Company 1 into a bank account in the Cayman Islands held in the name of a relative of Official A, in exchange for Official A's assistance in connection with PDVSA contracts.

j. On or about September 27, 2013, **CASTILLO** caused $63,860.00 to be transferred from a bank account in the Southern District of Texas in the name of Company 1 into a bank account in the Cayman Islands held in the name of a relative of Official A, in exchange for Official A's assistance in connection with PDVSA contracts.

9

k. On or about October 18, 2013, **CASTILLO** caused $63,860.00 to be transferred from a bank account in the Southern District of Texas in the name of Company 1 into a bank account in the Cayman Islands held in the name of a relative of Official A, in exchange for Official A's assistance in connection with PDVSA contracts.

l. On or about January 3, 2014, at **CASTILLO**'s request, Employee B emailed **CASTILLO** a list of payments. The "vendor" listed for five of the payments, totaling $48,000, was Official A. The "vendor" listed for an additional two payments, totaling $127,720, was a fictitious company, named after a relative of Official A.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO – FOUR
### (Foreign Corrupt Practices Act – 15 U.S.C. § 78dd-2; 18 U.S.C. § 2)

18.     Paragraphs 1 through 9 and 11 through 17 are realleged and incorporated by reference as though fully set forth herein.

19.     On or about the dates set forth below, in the Southern District of Texas and elsewhere, the defendant,

**JUAN CARLOS CASTILLO RINCON,**

being a domestic concern and an officer, director, employee, agent, and shareholder of a domestic concern, and by aiding and abetting a domestic concern, did willfully use and cause to be used the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official, and to a person, while knowing that all and a portion of such money and thing of value would be and had been offered, given, and promised to a foreign official, for purposes of: (i) influencing acts and decisions of such foreign official in his or her official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts

11

and decisions of such government and agencies and instrumentalities, in order to assist **CASTILLO**, Company 1, Co-Conspirator 1, and others in obtaining and retaining business for and with, and directing business to, Company 1 and its associated companies, and others, as follows:

| COUNT | DATE | MEANS AND INSTRUMENTALITIES OF INTERSTATE COMMERCE |
|-------|------|----------------------------------------------------|
| Two | June 10, 2013 | $59,928.87 wire transfer from Company 1's bank account in the Southern District of Texas to a bank account in the Cayman Islands in the name of a relative of Official A ("the Cayman Islands account"). |
| Three | September 27, 2013 | $63,860.00 wire transfer from Company 1's bank account in the Southern District of Texas to the Cayman Islands account. |
| Four | October 18, 2013 | $63,860.00 wire transfer from Company 1's bank account in the Southern District of Texas to the Cayman Islands account. |

All in violation of Title 15, United States Code, Section 78dd-2, and Title 18, United States Code, Section 2.

## COUNT FIVE
### (Conspiracy to Commit Money Laundering – 18 U.S.C. § 1956(h))

20.     Paragraphs 1 through 9 and 11 through 17 are realleged and incorporated by reference as though fully set forth herein.

21.     From in or around April 2013, and continuing through at least October 2013, in the Southern District of Texas and elsewhere, the defendant,

### JUAN CARLOS CASTILLO RINCON

did knowingly conspire, confederate, and agree with Official A and others known and unknown to the Grand Jury, to commit offenses under Title 18, United States Code, Section 1956, namely

a.  knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, to conduct or attempt to conduct such a financial transaction which in fact represented the proceeds of specified unlawful activity, knowing that the transaction is designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, namely, bribery of a foreign official, a felony violation of the FCPA, Title 15, United States Code, Sections 78dd-2, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b.  transporting, transmitting, or transferring, or attempting to transport, transmit, or transfer a monetary instrument or funds from a place in the

United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, namely, bribery of a foreign official, a felony violation of the FCPA, Title 15 United States Code, Sections 78dd-2, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

## Manner and Means of the Conspiracy

22.     The manner and means by which **CASTILLO** and his co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following, while in the Southern District of Texas and elsewhere:

23.     **CASTILLO**, together with others, procured lucrative logistics contracts from PDVSA Services Inc. through corrupt and fraudulent means, including by paying bribes to PDVSA officials.

24.     **CASTILLO** and Official A, together with others, created false justifications for certain of the bribes, including invoices for services that were never performed, for the purpose of concealing and disguising the nature, source, and ownership of those bribe payments.

25.     **CASTILLO**, together with others, directed the wire transfer of, and caused to be wired, bribe payments from Company 1's bank account in the United

States to a bank account outside of the United States, the Cayman Islands account, for the purpose of promoting the bribery scheme.

26.     **CASTILLO** and Official A, together with others, directed bribe payments to be sent to a recipient other than Official A, namely a relative of Official A who was the owner of the Cayman Islands account, for the purpose of concealing and disguising the nature, source, and ownership of the bribe payments, and promoting the ongoing bribery scheme.

27.     After **CASTILLO** had transferred funds to the Cayman Islands account, Official A directed the wire transfer of, and caused to be wired, a portion of the funds to various bank accounts in the United States held in Official A's name and in the names of his relatives, for the purpose of concealing and disguising the nature, source, and ownership of the bribe payments, and promoting the ongoing bribery scheme.

All in violation of Title 18, United States Code, Section 1956(h).

## NOTICE OF CRIMINAL FORFEITURE
### (28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C))

28.     Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), the United States gives notice to the defendant,

### JUAN CARLOS CASTILLO RINCON,

that in the event of conviction of any of the offenses charged in Counts 1 through 4 of this Indictment, the United States intends to seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

## NOTICE OF FORFEITURE
### (18 U.S.C. § 982(a)(1))

29.     Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to the defendant,

### JUAN CARLOS CASTILLO RINCON,

that upon conviction of the offense charged in Count 5 of this Indictment, all property, real or personal, involved in money laundering offenses or traceable to such property, is subject to forfeiture.

## PROPERTY IN SUBSTITUTION

29.     In the event that a condition listed in Title 21, United States Code, Section 853(p) exists, the United States may seek to forfeit any other property of

the defendant in substitution up to the total value of the property subject to

forfeiture.  The United States may seek the imposition of a money judgment

against the defendant.

A TRUE BILL

Original Signature on File

FOREPERSON

RYAN K. PATRICK
UNITED STATES ATTORNEY

SANDRA MOSER
ACTING CHIEF,
FRAUD SECTION
CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

BY:

JOHN P. PEARSON
DEPUTY CHIEF
ROBERT S. JOHNSON
ASSISTANT UNITED STATES
ATTORNEY

BY:

DAVID A. LAST
ASSISTANT CHIEF,
FRAUD SECTION
SARAH E. EDWARDS
JEREMY R. SANDERS
TRIAL ATTORNEYS